433 So.2d 1257 (1983)
Carl Curtis HODGES, Appellant,
v.
The CITY OF WINTER PARK, Iowa National Insurance Company, an Iowa Corporation, and the County of Orange, Appellees.
Nos. 81-1559 to 81-1561.
District Court of Appeal of Florida, Fifth District.
June 23, 1983.
Rehearings Denied July 13, 1983.
*1258 L. Edward McClellan, Jr., of McClellan, Kester & Vostrejs, P.A., Ocala and Wooten, Honeywell, Kest & Martinez, Orlando, for appellant.
Steven F. Lengauer, of Pitts, Eubanks & Ross, P.A., Orlando, for appellee Orange County.
H. David Luff, of Sanders, McEwan, Mims & McDonald, Orlando, for appellees City of Winter Park and Iowa Nat. Ins. Co.
SHARP, Judge.
Hodges appeals from a final summary judgment entered in favor of appellees City of Winter Park, Iowa National Insurance Company, and Orange County, Florida. The action below was for damages for personal injuries received by Hodges in a single car accident on December 23, 1978. The issues considered and determined by the trial court were whether the roadway on which Hodges was driving had been dedicated, and, if not, whether either governmental entity could be liable for an injury occurring thereon. The trial judge answered these questions in the negative. We affirm the summary judgment as to the determination that the road was not dedicated by statutory prescription, but we reverse the portion of the summary judgment which forecloses further consideration of Hodges' claim.
The uncontroverted evidence established that Hodges was injured while driving on Glendon Parkway in Orange County, near Winter Park. As he approached the intersection with Loren Avenue, the bottom of his car came into contact with a fixed object, causing the car to jerk to a sudden halt. Hodges hit his head on the windshield, and the back seat came loose and struck him from behind. Hodges did not see the object in Glendon Parkway before hitting it.
Hodges sought help from a man he knew who lived in that neighborhood, Bill McLaurin. McLaurin walked to the scene of the accident. He could see that the car was hung up. McLaurin brought his vehicle over and pulled Hodges' car off the obstacle. The obstacle was a City of Winter Park manhole which stuck up out of the soft sand surrounding it. The manhole is connected to Winter Park's sanitary sewer system. The sewer line was built in Orange County's fifty foot right-of-way on Glendon Parkway with the county's consent. The city installed the sewer line, and the manhole over it, in 1966.
In 1977 Orange County installed a storm sewer system in the same area as the city's sanitary sewer system. When the storm sewer project was begun, the Orange County construction coordinator located the city's manhole beneath bushes which were eight feet tall. At that time, the area was low and boggy. The county completed its storm sewer project in January, 1978. It leveled the dirt surrounding the city's manhole even with the top of it. The construction area was then backfilled, mulched and seeded, and a good stand of grass developed.
The tract of land on which Glendon Parkway is located had previously been platted, and Glendon was shown as a road on the plat. The parties do not dispute, however, that prior to the accident the portion of *1259 Glendon Parkway where the accident occurred had not been formally dedicated and thereby "opened" to the public for travel, nor had the city or county officially maintained that part of Glendon as a road. However, there was evidence that some automobile traffic was using it as a roadway. The manhole jutting up out of the soft sand was clearly hazardous to such traffic.
In its order granting the motions for summary judgment, the trial court relied upon Continental Insurance Company v. Belflower, 355 So.2d 840 (Fla. 1st DCA 1978), and section 95.361, Florida Statutes. Section 95.361(1), Florida Statutes (1975), states:
When a road, constructed by a county, a municipality, or the Division of Road Operations, has been maintained or repaired continuously and uninterruptedly for 4 years by the county, municipality, or Division of Road Operations, jointly or severally, the road shall be deemed to be dedicated to the public to the extent in width that has been actually maintained for the prescribed period, whether the road has been formally established as a public highway or not. The dedication shall vest all right, title, easement and appurtenances in and to the road in:
(a) The county, if it is a county road;
(b) The municipality, if it is a municipal street or road; or
(c) The state, if it is a road in the state highway system or state park road system,
whether there is a record of a conveyance, dedication, or appropriation to the public use or not. (Emphasis added).
In Belflower, the appellee was injured when his car struck a concrete slab lying beside the surface of a narrow dirt road near Edgewater. "There was evidence that a county commissioner caused the road to be cut many years ago and that twice since then other commissioners caused shell to be placed on portions of the road for the convenience of hunters." Id. The district court said there was no evidence these "desultory" activities occurred within a four year period, or that the county performed inspections or repairs within the meaning of section 95.361, Florida Statutes (1975). The district court reversed the judgment for damages because there was no proof of dedication of the private road.
As in Belflower, there was no formal dedication of Glendon Parkway. The most generous reading of the evidence reveals that Glendon Parkway was used by the public from time to time as a road, and that the area was cut and graded by city or county employees for a three year period prior to the accident.[1] Such evidence would not support a determination of a prescriptive dedication under the statute. We think the movants for summary judgment sustained their burden of proving an absence of questions of fact on this issue. Landers v. Milton, 370 So.2d 368 (Fla. 1979).
However, in Belflower the district court did not consider whether the county had placed the concrete by the road or knew of its existence. In this case, the City of Winter Park constructed the manhole and knew of its existence. Further, the county uncovered the manhole during its construction work, and cleared the area so that it could thereafter be used as a roadway. The county also knew the manhole existed and was aware of its nature and location.
In a recent series of cases, the Florida Supreme Court has examined the liability of governmental entities for their acts which later contribute to or cause someone injury. See, e.g., Ralph v. City of Daytona Beach, Case No. 62,094, (Fla. Feb. 17, 1983); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). The supreme court analyzed the problem in terms of planning level and operational decisions. A governmental entity may be liable for operational matters, which encompasses liability for creating a hazardous condition and then failing to take *1260 reasonable precautions to prevent foreseeable injuries.
When the trial court decided this case strictly on the basis of non-dedication of the roadway, it was painting with too narrow a stroke. The evidence clearly shows that Orange County and Winter Park created the manhole and structured its surroundings, and that Hodges was injured as a consequence of those acts. Whether the county and/or the city should be liable for the injury because they knew or should have known the manhole, situated as it then was, posed a hazard to the public, remains a factual issue which was improperly resolved by summary judgment. In such a case, governmental entities are required to act in a reasonably prudent manner and to warn or protect the public against known dangers or hazards. Ralph; City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982).
In Collom, the trial judge granted summary judgment on the ground that the use of bars, grates, or other protective devices on a storm sewer drainage ditch which crossed private property was a discretionary decision, and liability did not attach to the city. The district court reversed the trial court, and the supreme court affirmed the decision of the district court. The supreme court said

Collom ... illustrate[s] the application of the principle that once a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by the danger. [citations deleted]. The failure of government to act in this type of circumstance is, in our view, a failure at the operational level. (Emphasis original).
Id. at 1086
This case is similar to Collom. The issue determined in the summary judgment  whether or not to maintain or to accept the dedication of a street  was not the proper one. The issue should have been whether the city and/or county created a known dangerous condition which was not readily apparent to one who could be injured because of the condition. See Collom at 1087. The latter issue was not considered in rendering summary judgment in the present case. Further, as in Collom, the complaint in this case states a cause of action against the city and county for creating a known dangerous condition and failing to correct the condition or warn the public about it. That cause of action was not defeated by resolution of the non-dedication issue.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED
COWART, J., and WEINBERG, Associate Judge, concur.
NOTES
[1] Bill McLaurin testified at deposition that he believed Glendon Parkway had been driveable for, at most, three years before Hodges' accident.